Alan Alexander Beck 9145
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
Telephone: (619) 905-9105
Email:  Alan.alexander.beck@gmail.com

RICHARD L HOLCOMB 9177
Holcomb Law, A Limited Liability Law
Corporation 1136 Union Mall, Suite 805
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email:
rholcomblaw@gmail.com

Attorney for Plaintiffs Todd Yukutake and Justin Solomon

# IN THE DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and JUSTIN SOLOMON, <br><br> Plaintiffs, <br><br> vs. <br><br> HOLLY T. SHIKADA, in her official capacity as Attorney General for the State of Hawaiʻi, <br><br> Defendant. | CIVIL ACTION No.: _____ <br><br><br> VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

1

## <u>VERIFIED COMPLAINT FOR DECLARATORY</u>
## <u>AND INJUNCTIVE RELIEF</u>

COME NOW the Plaintiffs, TODD YUKUTAKE and JUSTIN SOLOMON, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendant as follows:

## I.    <u>PARTIES</u>

1.    Plaintiff Todd Yukutake is an adult male resident of the State of Hawai'i, resides in Honolulu, and is a citizen of the United States.

2.    Plaintiff Justin Solomon is an adult male resident of the State of Hawai'i, resides in Honolulu, and is a citizen of the United States.

3.    Defendant Holly T. Shikada is the Attorney General of Hawai'i. She is the chief law enforcement officer of Hawai'i. Pursuant to Section 26-7 of the Hawai'i Revised Statutes, Defendant Shikida has "the ultimate responsibility for enforcing penal laws of statewide application." *Amemiya v. Sapienza*, 63 Haw. 424, 427, 629 P.2d 1126, 1129 (1981).  The Department of the Attorney General, which Ms. Shikada directs, "administer[s] and render[s] state legal services, including furnishing of written legal opinions to the governor, legislature, and such state departments and officers as the governor may direct," including the restrictions complained of herein.  Haw. Rev. Stat. Ann. § 26-7 (West).  She is sued in her official capacity.

## II.      JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.     STATEMENT OF FACTS

6.      The State of Hawai'i generally bans the possession of "deadly or dangerous weapons" outside the possessor's home without some prior authorization. Haw. Rev. Stat. § 134-51.  The ban specifically includes "billies."  *Id*.

7.      "[A] person who carries a prohibited weapon upon his person, whether concealed or unconcealed, is a person 'armed' within the meaning of the statute." *State v. Ogata*, 58 Haw. 514, 519-20, 572 P.2d 1222, 1226 (1977). "HRS § 134-51 may be violated by the carrying of deadly or dangerous weapons, whether concealed or unconcealed." *Id.* at 520, 572 P.2d at 1227.

8.      The term billy and baton are synonymous with one another.  *See State v. Weldon*, 144 Haw. 522, 529, 445 P.3d 103, 110 (2019) (referring to an instrument as a "billy/baton"); *In Int. of Doe*, 10 Haw. App. 404, 407, n. 4, 876 P.2d 1348, 1350, n. 4 (1994) (citations omitted) (citing a number of sources that define "billy" as clubs, truncheons, and batons).

9.    Plaintiffs are not "authorized by law" to carry a baton and no known procedure exists that would allow Plaintiffs or other law-abiding citizens to achieve such authorization.

10.    The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

11.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

12.    The Supreme Court has recently affirmed that this right of self-defense does not extinguish at the threshold of the citizen's front door.  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, __ U.S. __, 142 S. Ct. 2111, 2134–35 (2022) (holding specifically that the Second Amendment "presumptively guarantees" the right to bear arms in public for the purpose of self-defense). "To confine the right 'to bear' arms to the home would nullify half of the Second Amendment's operative protections" and "would make little sense given that self-defense is 'the central component of the [Second Amendment] right itself.'"  *Id*.

13.    While *Bruen* addressed the right to bear actual firearms, it is obvious that the right extends to batons. Arms are "'weapons of offence, or armour of

defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

14.    The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, 577 U.S. at 411.

15.    Batons are "arms" within the meaning of the Second Amendment.

16.    Moreover, Defendant may not regulate "arms" unless that "regulation is consistent with this Nation's historical tradition" of regulating arms. *Bruen*, 142 S. Ct. at 2126. *Bruen* specifically rejects means end scrutiny and requires the government to "affirmatively prove that its … regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

17.    Defendant cannot meet that burden. Humans have used clubs or batons to defend themselves since prehistoric times. Moreover, Haw. Rev. Stat. § 134-51 was first enacted in 1937. *State v. Rackle*, 55 Haw. 531, 532, 523 P.2d 299, 300 (1974). This Court has recently found that a similar statutory prohibition enacted in 1934 was not "longstanding and presumptively valid." *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1083 (D. Haw. 2021).

18.     Even applying means-end scrutiny, many other jurisdictions have already found complete bans on the ownership of arms other than firearms are unconstitutional post-*Heller*.

19.     Bans on electric arms have been struck across the nation. *See People v. Yanna*, 824 N.W.2d 241, 243 (Mich. Ct. App. 2012) (striking down a Michigan statute criminalizing possession of electronic weapons), *Second Amendment Society v. Porrino*, No. 3:16-cv-04906-DEA (D.N.J. Nov. 16, 2016) Doc. No. 30 (consent decree where the Court found New Jersey's complete ban on electric arms is unconstitutional), ("Pursuant to the holdings in *Heller, McDonald and Caetano*, N.J. Stat. Ann . § 2C:39- 3(h), to the extent this statute outright prohibits, under criminal penalty, individuals from possessing electronic arms, is *declared* unconstitutional in that it violates the Second Amendment to the United States Constitution and shall not be enforced"); *See, Crystal Wright v. District of Columbia*, No. 1:16-cv-01556-JEB (D.D.C. Sept. 26, 2016) Doc. No. 18 (stipulating to a stay of a motion for preliminary injunction pending new legislation and agreeing not to enforce ban against plaintiffs); *Ford v. City of New Orleans*, No. 2:16-cv16433-MVL-KWR (E.D. La. Dec. 14, 2016) Doc. Nos. 17, 19-20 (stipulating that the city will not enforce the ban against plaintiff and consenting to a stay of litigation pending enactment of legislation that decriminalized possession of stun guns); *Hulbert v. Pantelides*, No. 1:16-cv-04121-JFM (D. Md. March 3, 2017) Doc. No. 16 (letter

from the City of Annapolis informing the court that the City Council passed an emergency ordinance eliminating all restrictions on ownership and possession of electronic weapons for personal defense); *Ramirez v. Commonwealth* No. SJC-12340, 2018 Mass. LEXIS 237 (Apr. 17, 2018) (striking Mass. ban on stun guns);[1] *See Avitabile v. Beach*, 2019 U.S. Dist. LEXIS 47506, __ F. Supp. 3d __, 2019 WL 1302858, striking New York State's ban on electric arms. *See People v. Walker*, 2019 Ill. LEXIS 329, 2019 WL 1307950 striking Illinois's ban on taser ownership and carry; *O'Neil v. Neronha*, No. 19-612 WES, 2022 U.S. Dist. LEXIS 45475 (D.R.I. Mar. 15, 2022) (striking down Rhode Island's ban on electric arms).

20.     In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second Amendment.  It found nunchucks are protected by the Second Amendment because they are bearable arms that are typically used for lawful purposes.  It then struck New York's ban because the State did not have an important government interest in banning these protected arms.

---

[1] Since *Caetano*, electronic arms bans in Philadelphia, Pennsylvania; Tacoma, Washington and Westminster, Maryland were also rescinded. https://reason.com/volokh/2022/03/15/r-i-stun-gun-ban-struck-down/ (last visited 7/20/2022);https://www.phillymag.com/news/2017/10/24/stun-guns-legal-philadelphia/ (last visited 7/20/2022).

21.    In *City of Seattle v. Evans*, 366 P.3d 906 (2015), the Washington Supreme Court evaluated the conviction for carrying a paring knife (a type of kitchen knife).    The Court found that paring knives are not protected by the Second Amendment because paring knives are not designed to be used for self-defense. "We hold that the right to bear arms protects instruments that are designed as weapons traditionally or commonly used by law-abiding citizens for the lawful purpose of self-defense. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense. We will also consider the weapon's purpose and intended function." *City of Seattle* at 913. Then the Court went on to strongly suggest that knives designed for self-defense such as "bowie knives and swords", having been commonly used for self-defense may be considered arms. *See City of Seattle* at 906.

22.    In *State v. Deciccio*, 105 A.3d 165 (Conn. 2014), the Connecticut Supreme Court overturned the conviction for transport of a dirk knife and a baton (also known as a billy) as a violation of the Defendant's Second Amendment rights. In doing so, the Court found that dirk knives and batons are protected by the Second Amendment because they are weapons with traditional military utility that are "typically possessed by law-abiding citizens for lawful purposes"; *Id*. at 625; and not

"dangerous and unusual weapons." (Internal quotation marks omitted.) *Id*., 627. It then applied intermediate scrutiny and held the conviction unconstitutional.

23.    The California Appeals Court has found that knives are protected by the Second Amendment. In *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012), the court held "the dirk or dagger concealed carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or non-switchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny." *Id*. at 1374.

24.    In *State v. Montalvo*, 162 A.3d 270 (2017), the New Jersey Supreme Court overturned the conviction for possession of a machete. In doing so, the Court found that machete-type knives are protected by the Second Amendment and that a conviction for their possession in the home was unconstitutional.

25.    In *State v. Murillo*, 2015-NMCA-046, ¶ 13, 347 P.3d 284, 289 the New Mexico Court of Appeals found intermediate scrutiny applied to New Mexico's ban on switchblades.  Despite upholding the ban, by applying intermediate scrutiny, it found switchblades are within the scope of the Second Amendment right.

26.    In *State v. Herrmann*, 2015 WI App 97, the Wisconsin Court of Appeals overturned appellant's the conviction for possession of a switchblade was

unconstitutional. In doing so, the court found that switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional.

27.     In *State v. Delgado*, 692 P.2d 610 (1984), the Oregon Supreme Court found that Oregon's ban on the possession of switchblades violated the Oregon Constitution's right to arms.

28.     Many other state courts have likewise concluded that the right to keep and bear arms found within their state constitutions extends beyond handguns. *See State v Griffin*, 2011 WL 2083893, *7 n 62, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (holding that the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same); *City of Akron v Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives*); State v Blocker*, 630 P2d 824 (1981) (same as to billy clubs), citing *State v Kessler,* 614 P2d 94 (1980); *also Barnett v State*, 695 P2d 991 (Ct App, 1985) (same as to blackjacks).

29.     Plaintiffs are bringing an as-applied and facial challenge to the applicable Hawaiʻi laws which prevent them from carrying billies and/or batons for purposes of lawful self-defense.

30.     Plaintiffs seek an injunction preventing enforcement of the applicable Hawai'i laws facially, as applied to themselves and they seek declaratory relief.

31.     Additionally, Plaintiffs seek an injunction preventing enforcement of the applicable Hawai'i laws as to all other law-abiding citizens.

### a. Billies are Protected by the Second Amendment

32.     In *Heller,* the Court ruled that the "Second Amendment extends prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of founding." *Heller*, 128 S. Ct. at 2817. In order to strike down the ban on handguns it ruled a complete ban on a protected arm cannot withstand any level of scrutiny. *Id.*

33.     Thus, while "dangerous and unusual weapons" may likely be regulated, "the sorts of weapons protected [a]re those 'in common use at this time.'" *Id*. at 627

34.     In *United States v. Henry*, 688 F. 3d 637 (9th Cir. 2012), the Ninth Circuit held that machine guns are not protected by the Second Amendment because they are dangerous and unusual. "A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. *See* George C. Wilson, Visible Violence, 12 NAT'L J. 886, 887 (2003)." Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns. A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that

were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market." *Id*. at 640.[2]

35.     However, unlike machineguns which have been artificially limited in ownership by § 922(o), billies are arms in common use for lawful self-defense.

36.     Police officers commonly possess them outside the home as a form of nonlethal defense.

37.     "Furthermore, the widespread use of the baton by the police, who currently perform functions that were historically the province of the militia; *see*, e.g., D. Kopel, "The Second Amendment in the Nineteenth Century," 1998 BYU L. Rev. 1359, 1534 demonstrates the weapon's traditional military utility.". *State v. Deciccio*, 315 Conn. 79, 133, 105 A.3d 165, 200, 2014 Conn. LEXIS 447, *87.

38.     A baton or billy is a roughly cylindrical club made of wood, rubber, plastic or metal. It is carried as a compliance tool and defensive weapon

39.     Billies are bearable arms.

40.     Billies are in common use for purposes of lawful self-defense.

41.     An attack from a billy has less potential to inflict injury than one from a firearm if all other variables are equal.

---

[2] Plaintiffs expressly reserve the right to challenge the accuracy of the Ninth Circuit's interpretation of *Heller's* dangerous and unusual language at the appropriate time.

42.     An attack from a billy is less capable of inflicting injury than one from a knife if all other variables are equal.

43.     Billies are less dangerous than handguns.

44.     Billies are less dangerous than knives designed for self-defense.

45.     Billies are not dangerous or unusual and are lawfully owned and legal in to own in 46 States[3].

46.     The Oregon Supreme Court's right to arms analysis "mirrors the model employed by the United States Supreme Court in District of Columbia v. Heller, supra, 554 U.S. 624-25". *See State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447, *63 (2014).

47.     In *State v. Kessler*, 289 Ore. 359, 614 P.2d 94, 1980 Ore. LEXIS 1031 (1980) the Oregon Supreme Court found:

> The club is considered the first personal weapon fashioned by humans. O. Hogg, Clubs to Cannon 19 (1968). The club is still used today as a personal weapon, commonly carried by the police. ORS 166.510 prohibits posession of a "billy;" however, ORS 166.520 states that peace officers are not prohibited from carrying or possessing a weapon commonly known as a "blackjack" or "billy." The statute in this case, ORS 166.510, prohibits the mere possession of a club. The defendant concedes that the legislature could prohibit carrying a club in a public place in a concealed manner, but the defendant maintains that the legislature cannot prohibit all persons from possessing a club in the home. The defendant argued that a person may prefer to keep in his home a billy club rather than a firearm to defend against intruders.

---

[3] New York, California, Nevada and Colorado ban billies.

> Our historical analysis of Article I, section 27, indicates that the drafters intended "arms" to include the hand-carried weapons commonly used by individuals for personal defense. The club is an effective, hand-carried weapon which cannot logically be excluded from this term. We hold that the defendant's possession of a billy club in his home is protected by Article I, section 27, of the Oregon Constitution.

48.    In *State v. Blocker*, 291 Ore. 255, 630 P.2d 824, 1981 Ore. LEXIS 915 (1981) the Oregon Supreme Court extended this ruling to find private citizens have a right to possess billy clubs outside the home.

49.    In *State v. Deciccio*, 315 Conn. 79, 117, 105 A.3d 165, 191, 2014 Conn. LEXIS 447 (2014), the Connecticut Supreme Court found that billies are protected by the Second Amendment and a complete ban on their possession is unconstitutional.  "[W]e are persuaded that the police baton that the defendant had in his vehicle is the kind of weapon traditionally used by the state for public safety purposes and is neither so dangerous nor so unusual as to fall outside the purview of the second amendment's right to keep and bear arms," *State v. Deciccio*, 315 Conn. 79, 133-134, 105 A.3d 165, 200-201, 2014 Conn. LEXIS 447, *89-92.

### b. Plaintiff Todd Yukutake

50.    Plaintiff Yukutake desires to keep and bear the same type of baton/billy policemen are usually issued and an expandable baton[4] for self-defense and other lawful purposes in public for the purpose of self-defense.

---

[4]    A type of expandable billy/baton is found here: https://www.budk.com/Expandable-Baton-26-Inch-22397

14

51.   Plaintiff Yukutake is imminently qualified to carry a baton.

52.   Plaintiff Yukutake completed the Honolulu Police Academy where he was trained in the use of batons.

53.   Plaintiff Yukutake was honorably discharged from the Army National Guard after 20 years of service.  Plaintiff Yukutake was trained in the use of batons during his service with the Army National Guard.

54.   Plaintiff Yukutake is employed by a company that contracts with the federal government to provide security in and around federal buildings.

55.   Through his employer, Plaintiff Yukutake receives annual baton training and certification, the most recent of which he successfully completed on July 9, 2022.

56.   While working at the federal buildings, Plaintiff Yukutake is armed with a firearm, a baton, pepper spray, and handcuffs.

57.   Plaintiff Yukutake has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaiʻi or federal law.

58.   Plaintiff Yukutake has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaiʻi or federal law.

59.   Plaintiff Yukutake does not take illegal drugs or abuse alcohol.

60.    Plaintiff Yukutake desires to keep and bear a billy in public and outside of his work duties. However, Plaintiff fears prosecution for possessing a billy in public and outside of his work duties.

61.    But for Hawaiʻi law, Plaintiff Yukutake would carry and where appropriate use a billy to protect himself, his home, his family and business.

### c.    Plaintiff Justin Solomon

62.    Plaintiff Solomon desires to keep and bear the same type of baton/billy policemen are usually issued and an expandable baton for self-defense and other lawful purposes in his home, business, whilst traveling between these locations and in all other public locations outside the scope of his work.

63.    Plaintiff Solomon was honorably discharged United States Marine Corps after twelve years of service.

64.    Since October 2017, Plaintiff Solomon has been employed by a company that contracts with the federal government to provide security in and around federal buildings.

65.    Through his employer, Plaintiff Solomon receives annual baton training and certification, the most recent of which he successfully completed during the week of October 2, 2021.

66.    While working at the federal buildings, Plaintiff Solomon is armed with a firearm, a baton, pepper spray, and handcuffs.

67. Plaintiff Solomon wishes to desires to keep and bear a billy in public and outside of his work duties. However, Plaintiff fears prosecution for possessing a billy in public and outside of his work duties. Plaintiff Solomon has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaiʻi or federal law.

68. Plaintiff Solomon does not take illegal drugs or abuse alcohol.

69. Plaintiff Solomon legally owns firearms.

70. Plaintiff Solomon has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaiʻi or federal law.

71. But for Hawaiʻi law, Plaintiff Solomon would carry and where appropriate use a billy to protect himself, his home, his family and business outside of the scope of his work duties.

## FIRST CAUSE OF ACTION
## U.S. CONST., AMEND. II & VIIII,

72. Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and incorporates the same herein by reference.

73. Defendant prohibits Plaintiffs from carrying and using a defensive arm in common use, i.e., billies. As such it violates Plaintiffs' Second Amendment rights.

74. Defendant's laws, customs, practices and policies generally banning the carrying and use of billies violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging

Plaintiffs in violation of 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against

such laws, customs, policies, and practices.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

75.     Plaintiffs repeat and re-plead the preceding paragraphs, inclusive, and

incorporate the same herein by reference.

76.     The Declaratory Judgment Act provides: "In a case of actual

controversy within its jurisdiction, any court of the United States may declare the

rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

77.      Absent a declaratory judgment, there is a substantial likelihood that

Plaintiffs will suffer irreparable injury in the future.

78.     There is an actual controversy between the parties of sufficient

immediacy and reality to warrant issuance of a declaratory judgment.

79.     This Court possesses an independent basis for jurisdiction over the

parties.

80.     A judgment declaring that the State of Hawai'i's ban on the keeping

and/or bearing of billies violates the Second Amendment will serve a useful purpose

in clarifying and settling the legal relations at issue and will terminate and afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

81.     Defendant's laws, customs, practices and policies generally banning the carrying and/or use of billies violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. Plaintiffs are therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.      An order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Section 134-51 of the Hawaiʻi Revised Statutes and any other relevant Hawaiʻi law which bans the carrying or use of billies facially, as applied to Plaintiffs and additionally against other similarly situated law abiding persons;

2.      An order declaring that Section 134-51 of the Hawaiʻi Revised Statutes, to the extent it deals with billies, and any other relevant Hawaiʻi law unconstitutional and violative of the Second Amendment to the United States Constitution facially, as applied to Plaintiffs, and additionally as applied to all other law-abiding citizens;

3.      Nominal damages;

4.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C.
§1988;

5.      Such other Declaratory relief consistent with the injunction as
appropriate; and

6.      Such other further relief as the Court deems just and appropriate.



Dated:  July 25, 2022.

                                Respectfully submitted,


                                /s/ Alan Beck
                                Counsel for Plaintiffs

                                Alan Alexander Beck
                                Law Office of Alan Beck
                                2692 Harcourt Drive
                                San Diego, CA  92123
                                (619) 905-9105
                                HI Bar No. 9145
                                Alan.alexander.beck@gmail.com


                                /s/ Richard L. Holcomb
                                Counsel for Plaintiffs

                                Holcomb Law, LLLC
                                1136 Union Mall, Suite 805
                                Honolulu, HI  96813
                                (808) 545-4040
                                HI Bar No. 9177
                                rholcomblaw@gmail.com